# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODGER DEAN ANDERSON,<br><br>               Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, NATIONAL ASSOCIATION,<br><br>               Defendant. | Case No.: 16cv3125-MMA (AGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE THE ERRATA TO PLAINTIFF'S DEPOSITION;**<br><br>[Doc. No. 48]<br><br>**GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; AND**<br><br>[Doc. No. 47]<br><br>**GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 10] |

Plaintiff Rodger Dean Anderson ("Plaintiff") brings this action against Defendant Credit One Bank, National Association ("Defendant" or "Credit One Bank") alleging three causes of action for: (1) violations of California's Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.*; (2) violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*; and (3) intrusion. *See* Complaint. On May 23, 2017, the Court denied Defendant's motion to compel arbitration of Plaintiff's claims because "factual disputes exist as to the existence of an arbitration agreement

between the parties." Doc. No. 16 at 7.  Defendant now moves for reconsideration, arguing that it has recently discovered information from Plaintiff's February 1, 2018 deposition.  *See* Doc. No. 47.  Plaintiff filed an opposition to the motion, to which Defendant replied.  *See* Doc. Nos. 53, 56.  Defendant also filed a motion to strike the errata to Plaintiff's deposition.  *See* Doc. No. 48.  Plaintiff filed an opposition, to which Defendant replied.  *See* Doc. Nos. 52, 55.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 58.  For the reasons set forth below, the Court **GRANTS** Defendant's motion to strike, **GRANTS** Defendant's motion for reconsideration, and **GRANTS** Defendant's motion to compel arbitration.

### BACKGROUND

Plaintiff, a resident of California, applied for a credit card with Credit One Bank. Upon approval, Defendant mailed Plaintiff a credit card.  Plaintiff activated his credit card in February 2015.  *See* Doc. No. 10 at 6.  Plaintiff began using his credit card for personal and household purposes.  Plaintiff closed his credit card account in June 2015, "after paying off the remaining balance."  Complaint ¶ 15.  Approximately four (4) months later, Defendant began telephoning Plaintiff and demanding payment.  However, Plaintiff notified Defendant that there was a $0.00 balance on his account.  Defendant informed Plaintiff that Plaintiff had not paid the annual card fee.  Plaintiff then paid the annual fee, but continued to receive phone calls from Defendant demanding payment for the annual credit card fee.  Plaintiff contends that Defendant "continued making calls, frequently multiple times per day, in an attempt to collect this debt from Plaintiff."  Doc. No. 11 at 6; *see also* Complaint ¶ 20.

Based on these allegations, Plaintiff filed the instant action alleging that Defendant made the phone calls in violation of California's Rosenthal Debt Collection Practices Act and the Telephone Consumer Protection Act, and that the collection calls amount to an intrusion.

Defendant moves for reconsideration of the Court's previous order denying its

motion to compel arbitration in light of Plaintiff's testimony at his February 1, 2018 deposition. Specifically, Defendant contends that Plaintiff admitted to receiving its Cardholder Agreement, Disclosure Statement and Arbitration Agreement (collectively referred to as the "Cardholder Agreement") in the same envelope as Plaintiff's credit card. Defendant also moves to strike the errata to Plaintiff's deposition. The Court begins by analyzing Defendant's motion to strike, followed by the motion for reconsideration.

## MOTION TO STRIKE

Defendant moves to strike the errata to Plaintiff's deposition pursuant to Federal Rule of Civil Procedure 30. *See* Doc. No. 48. Defendant argues that Plaintiff used the errata to make contradictory changes to his February 1, 2018 deposition testimony to "avoid summary judgment or arbitration." *Id.* at 6.[1]

Federal Rule of Civil Procedure 30(e) provides:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Fed. R. Civ. P. 30(e).

The Ninth Circuit has indicated that "[w]hile the language of FRCP 30(e) permits correction 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an

---

[1] The Court notes that when initially asked whether Plaintiff wished to make any changes to his deposition testimony, Plaintiff's counsel indicated that there were "no changes." Doc. No. 48-5 at 1. It was only after defense counsel inquired whether Plaintiff would stipulate to a joint motion to compel arbitration in light of Plaintiff's deposition testimony that Plaintiff's counsel indicated that Plaintiff had changed his testimony. *See* Doc. No. 48-7.

unfavorable summary judgment." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005). "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Id.* at 1226. "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses." *Azco Biotech Inc. v. Qiagen, N.V.*, No. 12-CV-2599-BEN (DHB), 2015 WL 350567, at *5 (S.D. Cal. Jan. 23, 2015). Where an individual uses Rule 30 to make contradictory changes to testimony made under oath, several courts have found striking the errata to be the appropriate remedy. *See Hambleton Bros. Lumber Co.*, 397 F.3d at 1226 (finding district court did not abuse discretion in striking the deposition errata for failure to comply with Rule 30(e)); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2017 WL 2389567, at *7 (E.D. Cal. June 1, 2017) (granting motion to strike errata sheets to deposition transcript because "Defendants' errata sheet display an attempt to materially alter the witnesses' testimony on critical facts in order to change the record for summary judgment and class certification."); *Azco Biotech Inc.*, 2015 WL 350567, at *3 (granting the motion to strike the errata where the proposed changes "expand, and in some cases, contradict, [the plaintiff's] deposition testimony."); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 8-CV-1392 JLS (NLS), 2010 WL 4817990, at *3-4 (S.D. Cal. Nov. 22, 2010) (granting motion to strike contradictory portions of errata sheet).

Here, upon due consideration, the Court finds that Plaintiff's errata sheet "runs afoul of Rule 30(e)'s . . . requirements." *Tourgeman*, 2010 WL 4817990, at *2. Plaintiff's sole proposed change expands and contradicts his sworn deposition testimony. Specifically, when asked at his deposition "[w]hen you received your Credit One credit card, was the credit card accompanied by an agreement such as the one you see here in Exhibit C?" Doc. No. 48-2 at 4.[2] Plaintiff responded, "I'm sure it was something similar

---

[2] Citations to document 48-2 refer to the pagination assigned by the CM/ECF system.

to this. They all are, all very similar." *Id.* Plaintiff seeks to change his response to counsel's question to: "No. The credit card was accompanied only by one sheet of paper that the credit card was stuck to using some type of gluey material. Prior to filing this lawsuit, I have never received exhibit C." Doc. No. 48-7 at 5.[3] Plaintiff does not directly respond to Defendant's arguments in his opposition to the instant motion, aside from summarily stating that he "signed the Errata in an effort for the truth to come forward with no confusion[.]" Doc. No. 52 at 2. However, "[c]hanging 'yes' to 'no' and 'correct' to 'no not correct' are paradigmatic examples of contradiction, rather than correction." *Tourgeman*, 2010 WL 4817990, at *2 (citing *Hambleton Bros. Lumber Co.*, 397 F.3d at 1226). As such, the Court finds that the errata to Plaintiff's February 1, 2018 deposition does not comply with the requirements of Rule 30(e), or with binding Ninth Circuit authority.

Accordingly, the Court **GRANTS** Defendant's motion to strike the errata to Plaintiff's February 1, 2018 deposition. *See Greer*, 2017 WL 2389567, at *7 ("To allow such changes would eliminate the purpose of deposition testimony, which is to elicit a witness's testimony under oath, in a recorded setting, subject to questioning without coaching from any other person.").

<u>MOTION FOR RECONSIDERATION</u>

As set forth in the Court's previous order, the Court concluded that Defendant had not met its burden of showing the existence of an agreement to arbitrate. *See* Doc. No. 16 at 7. Specifically, the Court relied on Plaintiff's declaration filed in support of his opposition to the motion to compel arbitration, wherein Plaintiff claimed that his credit card was not accompanied by any other document, he never received the Cardholder Agreement, and that Defendant did not notify Plaintiff that he was required to arbitrate disputes in connection with his credit card. *See id.* at 6-7. Defendant argues that at his February 1, 2018 deposition, Plaintiff "admitted that he received a document similar to

---

[3] Citations to document 48-7 refer to the pagination assigned by the CM/ECF system.

the Bank's Cardholder Agreement." Doc. No. 47 at 2. As such, Defendant requests the Court reconsider its previous motion and compel arbitration pursuant to Federal Rules of Civil Procedure 54(b)[4] and 60(b). *See id.* at 5. In opposition, Plaintiff maintains that "no new facts have come to light" and that he "did not receive the Cardholder Agreement prior to litigation[.]" Doc. No. 53 at 8.

## 1. <u>Legal Standard</u>

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. However, a motion for reconsideration may be construed as a motion to alter or amend a final judgment, order, or proceeding under Rule 60(b). *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989); *In re Arrowhead Estates Dev. Co.*, 42 F.3d 1306, 1311 (9th Cir. 1994). Additionally, a motion for reconsideration is proper under Civil Local Rule 7.1.i.1. *See* CivLR 7.1.i.

Reconsideration under Rule 60 may be granted in the case of: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; or (3) fraud; or if (4) the judgment is void; (5) the judgment has been satisfied; or (6) for any other reason justifying relief. Fed. R. Civ. P. 60(b). Under Rule 60, a motion for "relief from a final judgment, order or proceeding" may be filed within a "reasonable time," but must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding" for reasons (1), (2), and (3).[5] Fed. R. Civ. P. 60(c)(1).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Ultimately, however, the decision on a motion for

---

[4] Because the Court finds that reconsideration is appropriate pursuant to Rule 60(b) for the reasons discussed below, the Court need not analyze whether Defendant's motion for reconsideration is also proper pursuant to Federal Rule of Civil Procedure 54(b).

[5] Defendant's motion is timely pursuant to Rule 60(c). *See* CivLR 7.1.i.2 ("*Except as may be allowed under Rules 59 and 60* of the Federal Rules of Civil Procedure, any motion . . . for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered.") (emphasis added).

reconsideration lies in the Court's sound discretion." *Labastida v. McNeil Techs., Inc.*, No. 10-CV-1690-MMA (CAB), 2011 WL 767169, at *2 (S.D. Cal. Feb. 25, 2011) (citing *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003)). Defendant bases its motion for reconsideration on newly discovered evidence (Rule 60(b)(2)) and alleged misrepresentations or misconduct by an opposing party (Rule 60(b)(3)). *See* Doc. No. 47 at 6.

## 2. **Analysis**

Defendant argues that the Court should reconsider its order denying Defendant's motion to compel arbitration in light of "recently discovered information from Plaintiff's February 1, 2018, deposition testimony." Doc. No. 47 at 1. Additionally, Defendant claims that Plaintiff "made prior misrepresentations under oath, which this court relied on in denying" its motion to compel. *Id.* Plaintiff does not respond to Defendant's argument that Plaintiff's deposition testimony constitutes newly discovered evidence, but maintains that during his deposition, Plaintiff confused "the Cardholder Agreement with the solicitation he received from Credit One[.]" Doc. No. 53 at 5. "There is no confusion, the Plaintiff has never seen or received the Cardholder Agreement prior to litigation yet the Defendants continue to grasp at air to try and avoid trial." *Id.* The Court begins by addressing Defendant's "newly discovered evidence" argument.

"Evidence is not 'newly discovered' under [Rule 60(b)(2)] if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)).

Here, although Plaintiff's deposition testimony is difficult to follow at times, four passages are particularly important. First, defense counsel asked Plaintiff whether "the [credit] card was accompanied by an agreement." Doc. No. 48-2 at 3. Plaintiff replied, "I don't remember an agreement being with the card." *Id.* at 3-4. Second, defense counsel then directed Plaintiff's attention to Exhibit C, which is a copy of Defendant's

Cardholder Agreement, Disclosure Statement and Arbitration Agreement. *See id.* at 4. Defense counsel asked Plaintiff, "[w]hen you received your Credit One credit card, was the credit card accompanied by an agreement such as the one you see here in Exhibit C?" *Id.* Plaintiff responded, "I'm sure it was something similar to this. They all are, all very similar." *Id.* Third, when asked whether Plaintiff kept the agreement that he received that was similar to Exhibit C, Plaintiff responded, "I might have it at my house somewhere." Doc. No. 48-4 at 3.[6] Fourth, at the end of defense counsel's questioning on the subject, defense counsel asked Plaintiff, "what address did you receive your Credit One credit card and the agreement similar to the agreement you see in Exhibit C?" *Id.* Plaintiff replied, "8818 Gardena Road." *Id.* Notably, Plaintiff answered the question without correcting defense counsel that he never received a Cardholder Agreement with his credit card. *Id.* Plaintiff's argument that he confused the Cardholder Agreement with the solicitation he received from Credit One is unavailing, as the relevant portions of Plaintiff's deposition testimony do not even reference any such solicitation. Rather, Plaintiff's deposition testimony plainly contradicts his March 17, 2017 declaration wherein Plaintiff asserts that "the credit card came in the mail" and that "[t]he credit card was not accompanied by any other document." Doc. No. 11-1 at 2.

Moreover, Defendant asserts that it "could not possibly have known that Plaintiff would change his prior testimony . . . at his February 1, 2018 deposition." *Id.* at 6. Thus, Defendant maintains that it could not have discovered this evidence with reasonable diligence. Plaintiff does not address this contention. As such, the Court finds that Defendant has met its burden of presenting newly discovered evidence pursuant to Rule 60(b)(2).[7] *See Hamid v. Nike Retail Servs., Inc.*, No. 17-CV-600-DOC (JDEx), 2018 WL 1684316, at *5 (C.D. Cal. Apr. 6, 2018) ("Because Plaintiff has pointed to newly

---

[6] Citations to document 48-4 refer to the pagination assigned by the CM/ECF system.

[7] Therefore, the Court need not determine whether reconsideration is also appropriate under Rule 60(b)(3).

discovered evidence . . . , Plaintiff has satisfied his burden under Federal Rule of Civil Procedure 60(b)").

Accordingly, in light of the newly discovered evidence, the Court **GRANTS** Defendant's motion for reconsideration and finds it appropriate to reconsider its previous order denying Defendant's motion to compel arbitration. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. V. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence[.]"); *Brady v. Grendene USA, Inc.*, No. 12-CV-604-GPC-KSC, 2015 WL 3539702, at *3 (S.D. Cal. June 3, 2015) ("[T]he Court finds it appropriate to consider [Defendant's] motion [for reconsideration] based on the fact that the factual record has expanded.").

### MOTION TO COMPEL ARBITRATION

Having granted Defendant's motion for reconsideration, the Court turns to Defendant's motion to compel arbitration. *See* Doc. No. 10. In its previous order, the Court found that "factual disputes exist as to the existence of an arbitration agreement between the parties." Doc. No. 16 at 7 (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.")).

Defendant contends that in light of Plaintiff's February 1, 2018 deposition testimony, which contradicts Plaintiff's declaration submitted in opposition to the motion to compel arbitration, the Court should reconsider its order denying Defendant's motion to compel arbitration. *See* Doc. No. 47.

### 1. Legal Standard

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration

proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476-77 (1989).

A party moving to compel arbitration must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted). If the Court finds that the answers to those questions are "yes," the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339-41.

## 2. **Analysis**

In its motion to compel arbitration, Defendant argues that Plaintiff entered into an agreement to arbitrate with Credit One by activating his credit card, and that the

arbitration agreement encompasses Plaintiff's claims.  *See* Doc. No. 10 at 9-11.  In opposition, Plaintiff contends that he did not consent to any arbitration agreement, and even if he did, the arbitration agreement is unconscionable.  *See* Doc. No. 11 at 6, 10. The Court addresses the parties' arguments in turn.

### a. The Court May Consider Plaintiff's Challenge Regarding the Existence of an Agreement to Arbitrate

As an initial matter, Defendant contends that to the extent "Plaintiff asserts any challenge to the existence of the arbitration agreement, that issue has been contractually delegated to the arbitrator to decide."  Doc. No. 10 at 9 n.1.  Specifically, the Arbitration Agreement contains a delegation provision which indicates that the claims subject to arbitration "include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision[.]" Doc. No. 10-3 at 7.  According to Defendant, this clause means that the arbitrator, as opposed to the Court, should decide whether an agreement to arbitrate exists.  The Court disagrees.

The Supreme Court has repeatedly admonished that "[a]rbitration is strictly a matter of consent."  *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted).  Arbitration "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration[.]"  *Id.* (emphasis in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 541 U.S. 938, 943 (1995)).  "[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co.*, 561 U.S. at 299 (emphasis in original).  "Where a party contests either or both matters, 'the court' must resolve the disagreement."  *Id.* at 299-300 (quoting *First Options of Chicago, Inc.*, 541 U.S. at 943); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing the generally nonarbitral

question of whether an arbitration agreement was "ever concluded" from the question of whether a contract containing an arbitration clause was illegal when formed, the latter of which the Supreme Court held to be arbitrable in certain circumstances); *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-49 (1986) (explaining that "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration").

In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court indicated that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 561 U.S. 63, 68-69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce[.]" *Id.* at 70. The Ninth Circuit has indicated that, "[a]lthough challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (internal citations omitted). An "argument that there was 'no contract' [is] a challenge to the existence of a contract." *Id.* Thus, "[t]he FAA cannot compel a party 'to arbitrate the threshold issue of the existence of an agreement to arbitrate' unless there is an overarching agreement to do so within the FAA's scope." *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018) (quoting *Three Valleys Mun. Water Dist.*, 925 F.2d at 1140-41); *see also Rent-A-Ctr.*, 561 U.S. at 70 n.2 (cautioning that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[,]'" and noting that the it was "address[ing] *only the former*.") (emphasis added) (quoting *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1).

In *Olivas v. Hertz Corporation*, the district court considered a similar argument to the one Defendant makes in this case. No. 17-CV-1083-BAS-NLS, 2018 WL 1306422 (S.D. Cal. Mar. 12, 2018). Specifically, the defendant argued that because the arbitration

provision contained a delegation clause, the arbitrator, as opposed to the court, "should even decide whether an agreement to arbitrate exists." *Id.* at *4. The district court indicated that "[t]he problem with [the defendant's] position is it presupposes that an 'agreement to arbitrate arbitrability' exists." *Id.* at *5 (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). However, because the plaintiff challenged whether he agreed to the arbitration provision, the court found that it "cannot enforce the delegation clause—let alone the remainder of the Arbitration Provision—without first concluding [the plaintiff] entered into an agreement." *Id.*

Here, the Court finds the reasoning of the *Olivas* court persuasive and concludes that it must first determine whether the parties entered into an agreement to arbitrate. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016) (explaining that where a document "contain[s] a clause committing the parties to arbitrate, the threshold issue is whether that document constituted a binding agreement at all. *If it did not constitute such an agreement*, it follows that the arbitration provision is *not enforceable*.") (emphasis added). Unless the parties "clearly and unmistakably provide otherwise," the issue of arbitrability "is left to the court." *Momot*, 652 F.3d at 988; *see also United Steelworkers of Am. v. Warrior Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (noting that a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (remarking that although the FAA "embodies the national policy favoring arbitration[,] . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement."); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991 (N.D. Cal. 2017) (indicating that *after* determining the parties have clearly agreed to arbitrate, "the question becomes whether that agreement 'clearly and unmistakably delegates arbitrability questions to the arbitrator.") (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015)); 9 U.S.C. § 4 (authorizing the Court to compel arbitration once it is "satisfied that the making of the agreement . . . is not at issue").

Accordingly, "the Court—not the arbitrator—will determine whether Plaintiff agreed to the Arbitration [Agreement] and its delegation clause." *Olivas*, 2018 WL 1306422, at *5.

**b. An Agreement to Arbitrate Exists**

The Court first considers whether there is an agreement to arbitrate between the parties. *See Ashbey*, 785 F.3d at 1323. When determining the existence of valid arbitration agreements, "federal courts 'should apply ordinary state-law-principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "It is undisputed that under California law, mutual assent is a required element of contract formation."[8] *Doherty*, 2017 WL 588446, at *3 (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)); *see also* Restatement (Second) of Contracts § 3 ("An agreement is a manifestation of mutual assent on the part of two or more persons."). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141. In determining whether there is a genuine issue of fact concerning formation of an agreement, the party opposing arbitration shall receive "the benefit of all reasonable doubt and inferences." *Id.*

Here, the Court finds that there is no genuine issue of fact concerning the formation of an agreement to arbitrate. "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting

---

[8] Because "both sides have addressed contract formation as an issue of California law," the Court "applies California law to the question of whether a valid agreement to arbitrate was formed between [the parties]." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017).

*Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)). The Court previously found that "factual disputes exist as to Plaintiff's assent to the terms of the Credit One Bank's Cardholder Agreement, Disclosure Statement and Arbitration Agreement." Doc. No. 16 at 6. The Court relied on Plaintiff's declaration, wherein he claimed that his "credit card was not accompanied by any other document." Doc. No. 11-1 at 2. Defendant now presents Plaintiff's deposition testimony to support its argument that the parties entered into an agreement to arbitrate.

Plaintiff initially testified at his deposition that he could not remember whether an agreement accompanied his credit card in the mail. *See* Doc. No. 48-2 at 3-4. However, after defense counsel presented Plaintiff with a copy of its Cardholder Agreement, defense counsel asked, "[w]hen you received your Credit One credit card, *was the credit card accompanied by an agreement* such as the one you see here in Exhibit C?" *Id.* at 4 (emphasis added). Plaintiff then responded, "I'm sure it was something similar to this. They all are, all very similar." *Id.* Additionally, when asked if Plaintiff ever read the agreement, Plaintiff responded "[y]es." *Id.* Plaintiff further indicated that he "might have [the Cardholder Agreement] at his house somewhere" after defense counsel inquired whether Plaintiff kept the agreement or not. Doc. No. 48-4 at 3. Finally, when asked at what address Plaintiff "receive[d] [his] Credit One credit card *and the agreement* similar to the agreement" in Exhibit C, Plaintiff provided his address. *Id.* (emphasis added).

Defendant further submits the declarations of Gary Harwood, Vice President of Portfolio Services at Credit One Bank, in addition to the declaration of Jeffrey Meek, Vice President of Collections at Credit One Bank. As noted in the Court's previous Order, Mr. Harwood avers that Credit One Bank mailed Plaintiff a copy of Credit One Bank's Cardholder Agreement in the same envelope as Plaintiff's new credit card for activation. Doc. No. 10-1 (hereinafter "Harwood Decl.") ¶ 6. Moreover, Mr. Meek asserts that upon approval of Plaintiff's application for a credit card, Credit One Bank mailed Plaintiff a credit card for activation. *See* Doc. No. 56-1 (hereinafter "Meek Decl.") ¶ 7. "In the same envelope as the credit card was a copy of Credit One Bank's

*Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement* (the 'Cardholder Agreement')." *Id.* (emphasis in original). Moreover, it is "Credit One's policy to enclose as copy of the Cardholder Agreement when it mails the customer the credit card for activation." *Id.* ¶ 8. This policy "is a *mandatory and non-discretionary requirement* implemented automatically at Credit One to ensure that the Cardholder Agreement is mailed to its customers." *Id.* (emphasis added).

The Cardholder Agreement provides, "[b]y requesting and receiving, signing or using your card, you agree" to the terms of the Cardholder Agreement. Doc. No. 10-3 at 3.[9] Plaintiff activated his credit card on February 7, 2015. Harwood Decl. ¶ 7; *see also* Complaint ¶ 14. By doing so, Plaintiff assented to the terms of the Cardholder Agreement. *See* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."); *see also Esparza v. KS Indus., L.P.*, 221 Cal. Rptr. 594, 601 (Ct. App. 2017) ("Under California law, consent to a written contract may be implied by conduct."). Thus, because Plaintiff admits that he received the Cardholder Agreement in the mail with his Credit One credit card, and because Plaintiff assented to the terms of the Cardholder Agreement by activating his credit card, the Court finds that Defendant has met its "burden of proving the existence of an agreement to arbitrate." *Olivas*, 2018 WL 1306422, at *10.

The Court notes that in opposition to Defendant's motion for reconsideration, Plaintiff submits a declaration, dated March 8, 2018, which contradicts his February 1, 2018 deposition testimony.[10] *See* Doc. No. 53-3 (hereinafter "Anderson Decl."). In his most recent declaration, Plaintiff claims that "[t]he credit card was not accompanied by any other document." Anderson Decl. ¶ 6. Additionally, Plaintiff explains that "[w]hen

---

[9] Citations to document 10-3 refer to the pagination assigned by the CM/ECF system.

[10] Notably, Plaintiff does not cite to, or rely on, his declaration in his opposition brief.

asked what address I received the Card and the agreement, I responded with my current address. I was tricked by that question." *Id.* ¶ 10. Moreover, "[w]hen I stated that the Cardholder Agreement looked similar it is because I saw this agreement prior to the deposition when it was provided to me by my attorney in preparing my opposition to Defendants [sic] Motion to Compel." *Id.* ¶ 11. The Court, however, declines to consider Plaintiff's March 8, 2018 declaration pursuant to the "sham affidavit rule." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

    "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "[I]f a party who has been examined at length on deposition could raise an issue of fact by simply submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* The Ninth Circuit has fashioned "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Van Asdale*, 577 F.3d at 998. First, the rule does not apply automatically to every case where a contradictory affidavit is introduced; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* (quoting *Kennedy*, 952 at 267). Second, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. For example, the non-moving party is not prohibited from elaborating on, explaining, or clarifying prior testimony and "minor inconsistencies that result from an honest discrepancy, mistake, or newly discovered evidence[.]" *Id.* at 999.

    The Court finds that both limitations are satisfied based on the sequence of events that transpired from the date of Plaintiff's February 1, 2018 deposition. Specifically, and as noted above, Plaintiff responded numerous times to defense counsel's methodical questions at his deposition indicating that he received the Cardholder Agreement. Plaintiff did so without his counsel lodging any objections to defense counsel's questioning. Moreover, Defendant has presented evidence that on February 9, 2018,

Plaintiff's counsel initially informed defense counsel that Plaintiff had "no changes" to his deposition, and that Plaintiff's counsel would email the signed copy of Plaintiff's deposition to defense counsel later that night. Doc. No. 48-5 at 1. Later that day, defense counsel asked whether Plaintiff's counsel would be willing to stipulate to arbitration in light of Plaintiff's deposition testimony confirming that he received the Cardholder Agreement with his credit card. *See* Doc. No. 48-1 (hereinafter "Wade Decl.") ¶ 7. The following day, Plaintiff's counsel responded and noted that Plaintiff had made a change to his deposition testimony "to correct some confusion." Doc. No. 48-7 at 2. As noted above, Plaintiff attempted to substantively change the answer to one of the questions he answered at his deposition. *See* Doc. No. 48-7.

Further, after Defendant filed the instant motions to strike and for reconsideration, Plaintiff submitted the instant declaration which contradicts his deposition testimony, and which is not entirely consistent with his previous declaration. *Compare* Anderson Decl. ¶ 6 (indicating that "the card came in the mail glued to a piece of paper."), *with* Doc. No. 11-1 at 2 ("The credit card was not accompanied by any other documents."). Lastly, Plaintiff's new declaration fails to explain why Plaintiff never informed defense counsel at his deposition that he did not receive the Cardholder Agreement with his credit card. As such, the Court finds that the contradictions in Plaintiff's new declaration are a "sham," and that the inconsistencies between the deposition testimony and subsequent declaration are "clear and unambiguous to justify striking the affidavit." *Van Asdale*, 577 F.3d at 998-99.

In sum, taking into consideration Plaintiff's deposition testimony, the Harwood and Meek declarations, and Plaintiff's activation of his credit card, the Court finds that Defendant has met its burden in demonstrating that the parties entered into an agreement to arbitrate. *See Cordas*, 228 F. Supp. 3d at 990 (concluding that because the plaintiff "raises no *genuine* dispute of any *material* fact[,]" it is proper to find, as a matter of law, that the plaintiff "was on notice of Uber's terms and conditions, and assented to them in signing up for Uber.") (emphasis in original).

### c. Delegation of Arbitrability Determination

Plaintiff argues that even if he entered into an agreement to arbitrate with Defendant, the "disputed arbitration agreement is unconscionable and should not be enforceable against Plaintiff." Doc. No. 11 at 13. Before reaching Plaintiff's unconscionability argument, however, the Court must determine whether the parties clearly and unmistakably intended for an arbitrator to determine the validity of the Arbitration Agreement. As noted above, the Arbitration Agreement contains a delegation clause which provides that claims subject to arbitration "include, but are not limited to, disputes relating to . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision[.]" Doc. No. 10-3 at 7.

Language in an agreement "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement," and in doing so "clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability." *Momot*, 652 F.3d at 988 (quoting *Rent-A-Ctr.*, 561 U.S. at 68) (internal quotation marks omitted) (emphasis added). "[A] court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator[.]" *Brennan*, 796 F.3d at 1132.

Here, the delegation clause contained in the Arbitration Agreement expressly states that disputes relating to the "application, enforceability or interpretation of this Agreement" are subject to arbitration. Doc. No. 10-3 at 7. The Supreme Court and the Ninth Circuit have determined that similar language is sufficient to demonstrate a clear and unmistakable intent to arbitrate arbitrability. *See e.g., Rent-A-Ctr.*, 561 U.S. at 68 (concluding that language that an arbitrator "shall have exclusive authority to resolve any dispute relating to the . . . *enforceability* . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable" demonstrates a clear and unmistakable intent to arbitrate arbitrability) (emphasis added); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (indicating that language

delegating to the arbitrators the authority to decide issues relating to the "*enforceability*, revocability or validity of the Arbitration Provision . . . clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability.") (internal quotation marks and citation omitted) (emphasis added); *Momot*, 652 F.3d at 988 (finding that language delegating authority to the arbitrator to determine "the validity *or application* of any of the provisions" of the arbitration clause was clear and unmistakable) (emphasis added). As such, the Court finds that the delegation clause in the Arbitration Agreement "clearly and unmistakably" demonstrates an intent to arbitrate arbitrability.

"Despite a clear and unmistakable delegation of arbitrability, an arbitration provision may still be found unenforceable if delegation itself is unconscionable." *Appel v. Concierge Auctions, LLC*, No. 17-CV-2263-BAS-MDD, 2018 WL 1773479, at *6 (S.D. Cal. Apr. 13, 2018) (citing *Rent-A-Ctr.*, 561 U.S. at 74). Although Plaintiff argues that the Arbitration Agreement is unconscionable, Plaintiff does "not contest the validity of the delegation provision in particular." *Rent-A-Ctr.*, 561 U.S. at 74. In fact, Plaintiff does not mention the delegation provision at all in his opposition to the instant motion. In *Rent-A-Center*, the Supreme Court focused on whether the party opposing arbitration "challenged the delegation clause specifically." *Id.* at 72. The Supreme Court noted that the plaintiff "challenged only the validity of the contract as a whole," and that "nowhere in his opposition to Rent-A-Center's motion to compel arbitration did he even mention the delegation provision." *Id.* Here, similarly, Plaintiff only argues that the Arbitration Agreement, as a whole, is "overbroad" and "unfairly one-sided in favor of Defendant." Doc. No. 11 at 13. Therefore, the Court "must treat [the delegation clause] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72; *see also McLellan v. Fitbit, Inc.*, No. 16-CV-36-JD, 2017 WL 4551484, at *4 (N.D. Cal. Oct. 11, 2017) ("If plaintiffs raise a challenge specific to the validity of the delegation clause, the Court must consider it. Other challenges go to the arbitrator.")

16cv3125-MMA (AGS)

Accordingly, the Court **GRANTS** Defendant's motion to compel arbitration and requires the parties to "submit to the arbitrator whether their dispute is arbitrable." *Olivas*, 2018 WL 1306422, at *10.

<u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS** Defendant's motion to strike the errata to Plaintiff's deposition and **GRANTS** Defendant's motion for reconsideration. Additionally, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** this action. *See* 9 U.S.C. § 3. The Clerk of Court is instructed to terminate all pending motions, deadlines, and hearings, and administratively close the case. The parties must notify the Court within seven (7) days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: May 17, 2018

HON. MICHAEL M. ANELLO
United States District Judge